[Civ. No. 13795. Second Dist., Div. One. Nov. 23, 1942.]

Estate of RALPH LEWIS KRUGER, Deceased. DAISY MAY KRUGER, as Administratrix With the Will Annexed, etc., Appellant, v. ERNEST A. KRUEGER et al., Respondent.

Arthur Wm. Green and Horace W. Danforth for Appellant.

Victor Bewley for Respondent.

WHITE, J.—This is an appeal from a judgment, order and decree in probate directing distribution of an estate,

after determination by the court of the persons to whom distribution should be made pursuant to the terms of a holographic will.

The testator, Ralph Lewis Kruger, died January 19, 1941. He left a will entirely written, dated October 8, 1940, and signed by him (Prob. Code, § 53), reading as follows:

"This is the last Will & Testiment written by Col. Ralph Lewis Kruger Oct — 8 40—

"I give to my Brother Ernest A Kruger— all my personal properity—

"I give to my Sister—Mrs Homer Marsh— $1,000.00 "One thousand dollars" the rest of my belongings to my wife Daisy May Kruger after all my debts have been paid.

"RALPH LEWIS KRUGER

"October 8th 1940."

The foregoing will was admitted to probate and decedent's widow was appointed administratrix with the will annexed. On December 11, 1941, the administratrix filed her first and final account, report and petition for distribution, wherein she prayed for distribution of the estate under the will as follows: "All of the personal effects of the deceased to Ernest A. Kruger; the sum of $1,000 to Mrs. Homer Marsh; and all of the rest, residue and remainder of said estate to Daisy May Kruger, widow of said deceased." To this petition for distribution one of the legatees, Ernest A. Kruger, filed his written objections, wherein he asserted that by the terms of the will the widow "was to have the rest of his (Decedent's) belongings, meaning his interest in their real property, which consisted of property held in joint tenancy with said Daisy May Kruger, pension rights due her as a result of his military services, also all property given to her by gift during his lifetime or received by her as her half of a mutual division of their community property, and any real property." The objecting legatee asked that distribution be ordered as follows: "To Mrs. Homer Marsh $1,000.00; to Ernest A. Krueger, also known as Ernest A. Kruger, all the rest and remainder of the personal property of said estate." It is conceded that the estate administered under the will in its entirety consisted of personal property, in the form of building and loan association certificates, an automobile, trailer, and cash in bank.

Thereafter, and on January 14, 1942, the administratrix

filed her petition for an order construing and interpreting the will, and instructing her as to the manner in which distribution should be made. To this petition legatee Ernest A. Kruger filed objections wherein he alleged that the will was free from ambiguity and requested distribution "in accordance with the terms of said will."

With the issues thus framed, the matter proceeded to hearing, following which the court made findings to the effect that the estate "appears now to possess no real property and under the facts is conceded to be entirely community property of said decedent and said Daisy May Kruger"; that according to the petition for construction and interpretation of the will, there was in the estate, in addition to the property set forth in the inventory, "certain personal effects, consisting of the following: watch and chain, Shrine ring, Shrine pin, Elk pin, rosewood inlaid cigar box, 8 books, worn wearing apparel and other personal effects." The court further found that by the language contained in the will, "all my personal property," the decedent did not mean his personal effects; that there is no ambiguity in the will, and that "the definition of the word 'belongings' means: furniture, clothes, pictures, books and jewelry, only the things that are ordinarily used for personal comfort, and does not include money, automobile, automobile trailers, or building and loan certificates, or bank accounts." It was further found that the estate consisted entirely of community property, and "that under the circumstances of the estate and the terms of the said will, the said widow is not obliged to make an election, but upon distribution, one-half of the property for distribution shall pass to Daisy May Kruger."

As conclusions of law from the facts found, the court construed decedent's will as follows: That the words, "I give to my brother Ernest A. Kruger all my personal property" include the building and loan certificates and the automobile; and that by the language in the will, "the rest of my belongings to my wife, Daisy May Kruger, after all my debts have been paid," the decedent intended to give to his wife the aforesaid personal effects, including the watch chain, Shrine ring, etc. By its decree, the court ordered distribution as just set forth after payment of the expenses of administration and of the sum of $1,000 to Mrs. Homer Marsh, as directed in the will.

On this appeal, which comes to us upon the judgment

roll alone, the appellant widow of decedent contends that under the terms of the will it was the express desire and intention of the maker thereof to give to his legatee brother the testator's "personal effects," viz., the jewelry and lodge emblems, etc.; to his legatee sister the sum of $1,000, and to the widow all that then remained in the estate after the payment of debts. The present controversy therefore centers about the construction to be given the terms used in the will, "all of my personal property" and "the rest of my belongings." Appellant insists that the words, "personal property," as used in the dispositive clause of the will in dispute should be limited to purely personal effects rather than as such words are defined in the Civil Code (§§ 657 and 663.)

Section 106 of our Probate Code enjoins upon courts the duty to view testamentary words in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected and that other can be ascertained. As to technical words in a will, they are to be taken in their technical sense, unless the context clearly indicates a contrary intention or discloses that the testator was unacquainted with such technical sense. ▮ It is also axiomatic that we must stand by the words of the will, and we cannot attribute to the testator any intention which cannot reasonably be drawn from the language of the testamentary document itself; but it is also the rule that in examining a testamentary document we must do so with a view to discovering the dominant testamentary scheme or general intention of the decedent; and in this connection the apparent meaning of particular words, phrases or provisions must be subordinated to such scheme, plan or dominant purpose. (*Estate of Puett*, 1 Cal.2d 131, 133 [33 P.2d 825]; *Estate of La Fetra*, 14 Cal.App.2d 599, 602 [58 P.2d 678].) The obvious intention of the testator must prevail over the technical import of words. Because we must keep in mind that the interpretation of a particular testamentary instrument is dependent upon the language thereof, it follows that decisions which pass upon instruments which may vary in their terminology cannot be particularly helpful, except to give to us the rules of construction; but we may cite *Estate of Koch*, 8 Cal.App. 90 [96 P. 100]; *Andrews* v. *Schoppe*, 84 Me. 170 [24 A. 805], *Tallman* v. *Tallman*, 3 Misc. 465 [23 N.Y.S. 734], as indicative of the propriety of giving to the phrases "personal prop-

erty'' and ''belongings'' a limited or restricted meaning and operation, when such limitation and restriction is not inconsistent with the testator's manifest intention.

We are not in accord with the trial court's conclusion that there is no ambiguity in the will. It seems clear to us that it was not the intention of the testator in the first paragraph of his will to give to his brother all of his personal property as that phrase is understood and technically defined, because immediately following this bequest the testator gives to his sister $1,000 of his personal property. Were we to hold otherwise, we would defeat the plan and evident intention of the testator not to give all of his personal property to his brother but to give some of it to his sister. Furthermore, after bequeathing ''all my personal property'' to his brother, the testator makes provision for his wife and the payment of his debts. It seems to us, when we examine the context to determine the intention of the testator when he used the words ''all my personal property,'' that he used that phrase in the popular sense, and thereby meant only such goods and chattels as are the subject of personal use or comfort, rather than in the legal sense which embraces all classes of property except real property. When we examine the will as a whole we are persuaded that the particular words were not used in their legal and comprehensive sense, but rather in their popular and more restricted sense. With reference to the bequest made to the widow, when we take into consideration the entire scheme or dominant plan of the will, the property disposed of, the persons named as legatees, the words used, and the context, we are impressed that the obvious intention of the testator was to give his brother those articles of personal property that were personal to him and could be utilized in a like capacity by his brother; that he intended to give $1,000 to his sister, and that thereafter whatever belonged to or remained in the estate after payment of debts should go to the widow. In other words, we feel that it does violence to reason to assume that the testator, in using the words, ''the rest of my belongings,'' to his widow, meant a watch and certain lodge emblems; while reason is satisfied by the assumption, in view of the context and general scheme of the will, that what was meant by the last quoted phrase was that everything in the estate not utilized for the payment of debts and not previously disposed of by provisions of the will should go to the widow. We arrive

at this conclusion when we apply to the testamentary document with which we are here concerned the basic rule for the interpretation of wills, which is that the intention of the testator as expressed by the language he employed in his entire will should prevail. The word "belongings" used by the testator with reference to the bequest to his wife, is generally understood as including the property that one owns, and it is not infrequently used in that broad sense; and in the instant case we feel that the word may reasonably be used to include all of the testator's remaining property when we consider how the word "belongings" is ordinarily understood by the lay mind. Were we to give any other construction to the questioned phrases, then, as heretofore indicated, we would violate the fundamental rule enjoined upon us for the construction of wills—that we should carry out the intention of the testator as expressed by the language he used in its entirety—; and furthermore, should we adopt respondent's contention we would frustrate the second bequest in the will which provides for the testator's sister. Especially is this true in the light of the fact that the entire estate consists of personal property as that term is used in its technical sense.

In the light of the foregoing, it becomes unnecessary to discuss the widow's status as survivor of the community, because under our holding, she is entitled to receive the entire estate remaining after payment of debts, expenses of administration, and the legacies to the brother and sister of decedent.

For the reasons herein stated, the judgment, order and decree of the court, sitting in probate, from which this appeal is taken, is reversed, and the cause remanded with directions to the court below to order distribution of said estate in conformity with the petition for distribution presented by appellant administratrix with her first and final account dated December 8, 1941, and filed December 11, 1941. Pursuant to section 1232 of the Probate Code, and in the interests of justice, it is further ordered that both parties recover their respective costs on this appeal out of the assets of this estate.

York, P. J., and Doran, J., concurred.